```
          UNITED STATES DISTRICT COURT FOR THE
             MIDDLE DISTRICT OF PENNSYLVANIA
RANDY GREENFIELD,                :
                                 :
       Plaintiff                 :    No. 4:CV-05-0217
                                 :
   vs.                           :    (Complaint Filed 02/02/05)
                                 :
                                 :    (Judge Muir)
COUNTY OF LACKAWANNA, et al.,    :
                                 :
       Defendants                :
```

**ORDER**

July 27, 2006

## I.   Background

This counseled civil rights complaint pursuant to 42 U.S.C. § 1983 was filed on February 2, 2005, on behalf of Randy Greenfield, an inmate formerly confined at the Lackawanna County Prison, Scranton, Pennsylvania.[1] The named defendants are Lackawanna County and Lackawanna County Prison.

In his complaint, Greenfield claims that defendants violated his Fifth, Eighth, Ninth and Fourteenth Amendment rights when they failed to protect him from an assault by another prisoner and then failed to provide adequate medical treatment. (Doc. No. 1, complaint). Presently before the Court is defendants'

---

[1] Plaintiff currently resides at 215 N. Hyde Park Avenue, Scranton, Pennsylvania.

motion for summary judgment. (Doc. No. 8). The motion is fully briefed and is ripe for disposition. In his brief in opposition, plaintiff surrenders his claim for inadequate medical care. (See Doc. No. 17, p. 5). Thus, the only issue for summary judgment is defendants' alleged failure to protect plaintiff from assault by another inmate, in violation of the Eighth Amendment.[2] For the reasons that follow, the defendants' motion for summary judgment will be granted.

## II. **Legal Standard**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat

---

[2] Plaintiff's failure to protect claim is analyzed under the Eighth Amendment. See Faulcon v. City of Philadelphia, 18 F.Supp.2d 537, 540 (1998). Even assuming that it could also be considered under the Due Process Clause of the Fourteenth Amendment the test is the same. Id.

2

an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson vs. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S. at 248; Gray vs. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; Brenner vs. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party.  Moore vs. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement vs. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White vs. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her

3

pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation vs. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. vs. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter vs. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

### III.     Statement of Facts

From the pleadings, declarations and exhibits submitted

4

therewith, the following facts can be ascertained as undisputed.

On March 23, 2004, inmate, Kenneth Michaels was committed to the custody of the Lackawanna County Prison. (Doc. No. 19, pp. 17 & 18, Recommitment). He was imprisoned on charges of simple assault, aggravated assault, recklessly endangering another, retail theft, possession with intent to use drug paraphernalia, resisting arrest and driving under the influence with a suspended license. Id.

By Order dated June 28, 2004, plaintiff was committed to the custody of the Lackawanna County Prison as a parole violator. (Doc. No. 10, Ex. A-5, Order). Plaintiff and inmate Michaels were both housed on DC cell block. (Doc. No. 10, Ex. D. Deposition of Randy Greenfield at p. 11).

On August 10, 2004, plaintiff and another inmate were working out on DC Block. Id. at p. 14. Inmate Michaels asked plaintiff for a match. Id. at p. 16. Plaintiff told Michaels that he would get one for him when he was done working out. Id. Michaels then proceeded to go into plaintiff's cell and "ripping apart [plaintiff's] whole bed and basically just rummaging through all of [plaintiff's] stuff, to get a match stick." Id. Plaintiff told him to "stop going through [his] stuff" and that

he would get the match for him. Id. Michaels then told plaintiff that if he didn't like it, he could "go down to his cell to fight him." Id. at p. 17. Plaintiff "told him no." Id. Plaintiff then went "back to [his] corner" to make his bed "when [Michaels] came from behind and started hitting [him]" and "before [he] knew it [he] was on the ground spun around" and "knocked out basically." Id. at pp. 16, 17. Plaintiff had been struck in the jaw by inmate Michaels. Id. Immediately after the incident inmate Michaels was placed in segregation in the Delta Unit. (Doc. No. 10, Ex. C-1).

On August 11, 2004, inmate Michaels was issued Misconduct Report No. 0804428, for assault. (Doc. No. 10, Ex. C-1). The misconduct specifically stated that:

> Inmate Greenfield reported that he had fallen while doing push-ups and struck his jaw. He was sent to Mercy Hosp. for treatment and surgery for a broken jaw. It was learned from a C.I. that Greenfield had been struck by I/M Michaels following a brief argument over a mattress. Michaels was placed in Delta w/o incident.

Id. Inmate Michaels' disciplinary hearing was held on August 17, 2004. (Doc. No. 10, Ex. C-5). Michaels pled guilty to the misconduct, stating the following:

> I was sleeping. I was the block runner. Officer Pallott (sic) called me to get a mattress for a new

6

> inmate. Greenfield had 2 mattresses. I asked him for 1 of the 2. Outside the cell it was ok. In the cell his story changed. He started getting loud & aggressive. He came at me & I defended myself. I swung and hit him. He took the wires off his jaw himself. He had a broken jaw when he came. I'm here 6 mos. w/o incident. He's been here 1 month with injury.

Id. As a result of Michaels' altercation with Greenfield, he was sentenced to forty-five (45) days disciplinary confinement. Id. Prior to his altercation with Greenfield, inmate Michaels was not subject to any other disciplinary action while confined at the Lackawanna County Prison. (Doc. No. 10, Ex. C-6).

**IV   Discussion**

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton vs. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer vs. Brennan, 511 U.S. 825, 833 (1994)). Although, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is

7

simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834 (quoting Rhodes vs. Chapman, 452 U.S. 337, 345 (1981)). A plaintiff, however, must prove more than that he had a fight with another inmate, see Beard vs. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), and mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. Davidson vs. Cannon, 474 U.S. 344, 347-48 (1986). To succeed, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton vs. Leavy, 117 F.3d at 747. It is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew,

8

rather than what a reasonable official in his position should have known. "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." Id. In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious. The Farmer Court explained in hypothetical terms the type of circumstantial evidence sufficient for a finding of actual knowledge on the part of a prison official:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43.

Thus, in order to survive defendants' summary judgment motion, Greenfield was obligated to produce sufficient evidence to support the inference that defendants "'knowingly and unreasonably disregarded an objectively intolerable risk of

9

harm.'" Beers-Capitol vs. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001). It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." Id. at 138.

In this case, there is no question that the harm involved, a broken jaw, was serious. The determinative issue presented in this case is whether a material issue of fact exists as to whether the defendants knew or must have known of the risk and were deliberately indifferent to it. The fact that Greenfield and Michaels were confined as inmates on the same block, and that the altercation took place there, does not alone support an inference of a deliberate indifference to a substantial risk of serious harm. While the record does reveal that Michaels came to Lackawanna County Prison with a history of violent convictions, this is true for the majority of inmates housed in prison, and alone does not establish that defendants were deliberately indifferent to an excessive risk to Greenfield's health or safety. The record is completely devoid of any evidence that, while at the Lackawanna County Prison, Michaels demonstrated any problem behavior or cause for concern of which defendants knew

or were aware. Greenfield never complained to any correctional officer or any other prison official about Michaels' behavior prior to the date of the incident with Michaels.  There is no evidence of record that Michaels ever threatened Greenfield, or any other inmate, prior to the August 10, 2004 altercation.

To the extent that the plaintiff attempts to posture in his brief in opposition that defendants' failed to properly classify Michaels based on his "detailed history of assaultive behavior in the County of Luzerne," (Doc. 17, p. 4),it is undisputed that Michaels criminal convictions were for assaultive behavior. However, there is no evidence of record that Michaels was the subject of any disciplinary action while incarcerated at the Lackawanna County Prison, or any other prison. Nor is there any evidence of record that Michaels posed a specific threat to Greenfield.  The record establishes, and Greenfield does not dispute, that Michaels had no separations with respect to Greenfield or any other inmate at the Lackawanna County Prison. In fact, Michaels had been entrusted to serve as a block runner. (Doc. No. 10, Ex. C-3). Thus, there is nothing in the record to establish that defendants knew or were aware or had any reason to know or be aware of any substantial risk of serious harm

11

posed by Michaels.

There is also no evidence in the record that the defendants ever obtained any knowledge or awareness from Greenfield that Michaels posed any substantial risk to his safety. Greenfield admits that he had no history of problems with Michaels or any fear of him. (Doc. 10, Ex. D, p. 21). At no time did Greenfield ever express any concern about Michaels to any prison official, either prior to or even during the altercation. Id. In fact, it was not until defendants learned from a third party that plaintiff had been involved in an altercation with Michaels. (See Doc. 10, Ex. C-1). Greenfield admits that he did not report to prison officials that Michaels assaulted him(Doc. No. 10, Ex. D, p. 19), and initially maintained that he fell and broke his jaw while working out. Id.

Thus, the record lacks sufficient evidence to establish that defendants knew or were aware of and disregarded a substantial risk to Greenfield's health or safety. There is no evidence in the record which would create a material issue of fact with regard to whether defendants had the requisite level of knowledge or awareness necessary to impose liability under the Eighth Amendment. There is no evidence from which it could be

12

inferred that Michaels posed a risk of harm to Greenfield. Nor is there evidence of a pervasive, long-standing problem of assaults by inmate Michaels at the Lackawanna County Prison. Accordingly, summary judgment is warranted in favor of defendants.

**IT IS HEREBY ORDERED THAT:**

1. The motion for summary judgment filed by Defendants Lackawanna County and Lackawanna County Prison(Doc. No. 8)is **GRANTED**.[3]

---

[3] The United States Supreme Court established in Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989), that "a State is not a person within the meaning of § 1983." Ordinarily, only actual persons are subject to suit under § 1983. Id. at 71. Furthermore, a prison is not a person within the meaning of § 1983. Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973). Consequently, the claims against the Lackawanna County Prison are clearly subject to dismissal.

Also, the only basis for liability against a local governmental body, such as Lackawanna County, is an allegation that an official policy or custom is responsible for a deprivation of rights protected by the Constitution. Monell v. Department of Social Services, 436 U.S. 658 (1978); see also Roman v. Jeffes, 904 F.2d 192 (3d Cir. 1990). In Monell, the Supreme Court added that liability may not be premised on a theory of respondeat superior, rather, only on a claim that the governmental unit itself supported the alleged constitutional violation.

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. Andrews, 895 F.2d at 1480; see also Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.), cert. denied, 492 U.S. 919 (1989) ("Custom may be

2. The Clerk of Court is directed to enter judgment in this case in favor of defendants and against plaintiff.

3. The Clerk of Court is directed to **CLOSE** this case.

4. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

                                      s/Malcolm Muir
                                      MUIR
                                      United States District Judge

---

established by proof of knowledge and acquiescence."). We are unable to discern any evidence of a policy, custom or practice of Lackawanna County which would subject it to liability.